# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Nationstar Mortgage, LLC, | Case No. 2:16-cv-01218-JAD-EJY |
| Plaintiff | |
| v. | **Order Granting Summary Judgment for Nationstar Based on Tender, Dismissing Other Claims and Theories, and Closing Case** |
| Copper Sands Homeowners Association, Inc.; 8101 Flamingo 1032 Trust; Alessi & Koenig, LLC, | |
| Defendants | [ECF Nos. 64, 65] |

This is one of the hundreds of lawsuits in this district in which the holder of a deed of trust seeks a declaration that a homeowner's association's non-judicial foreclosure sale did not extinguish its security interest. Here, Nationstar Mortgage, LLC, sues the Copper Sands Homeowners Association (the HOA), which conducted the 2013 foreclosure sale of a home on which it holds the first deed of trust, along with the current property owner, the 2101 Flamingo 1032 Trust.[1] Nationstar and the Trust cross-move for summary judgment.[2] Because I find that Nationstar's quiet-title claim is timely and that its predecessor's tender of the superpriority portion of the HOA's lien prevented the sale from extinguishing the deed of trust, I grant summary judgment in Nationstar's favor.

---

[1] Nationstar also sued the HOA's foreclosure agent, Alessi & Koenig, LLC. Default has since been entered against Alessi & Koenig. *See* ECF Nos. 47, 48.

[2] I find these motions suitable for disposition without oral argument. L.R. 78-1.

**Background**

Davit Mirzoyan purchased the condominium home at 8101 West Flamingo Road # 1032 in Las Vegas, Nevada, in 2006 with a $125,600 mortgage secured by a deed of trust.[3]  After a series of assignments, Nationstar now holds that deed of trust.[4]  The condo is located within the Copper Sands planned-unit development community and subject to the governing documents for its homeowners' association.  The Nevada Legislature gave homeowners' associations a superpriority lien against residential property for certain delinquent assessments and established in Chapter 116 of the Nevada Revised Statutes a non-judicial foreclosure procedure for them to enforce that lien.[5]  The monthly assessment for the Mirzoyan condo was $164.45, and after months of nonpayment, the HOA—through its agent Alessi & Koenig—commenced foreclosure proceedings by sending a notice of delinquent assessment dated March 26, 2011.[6]

When the then-holder of the deed of trust, Bank of America, learned of the impending foreclosure, its counsel, the law firm of Miles, Bauer, Bergstrom & Winters, LLP, sent a letter to the HOA, advising that its client "hereby offers to pay" the nine months of assessments for common expenses incurred before the date of the HOA's notice of delinquent assessment and asking the HOA to "refrain from taking further action to enforce this HOA lien until" the parties could "speak to attempt to fully resolve all issues."[7]  Alessi & Koenig responded with an account statement reflecting that assessments were charged on a monthly basis and that the nine months

---

[3] ECF No. 64-2 at 2 (deed of trust).

[4] ECF Nos. 64-3, 64-4, 64-5.

[5] Nev. Rev. Stat. § 116.3116; *SFR Inv. Pool 1 v. U.S. Bank* ("*SFR I*"), 334 P.3d 408, 409 (Nev. 2014).

[6] ECF No. 64-6.

[7] ECF No. 64-9 at 10.

of assessments before the notice totaled $1,480.05.[8]  That statement also reflected no unpaid

fines assessed before that notice of lien went out.[9]  Though this meant that the superpriority

amount of the HOA's lien was $1,480.05, Alessi & Koenig took—and communicated to Miles

Bauer—the position that it would go forward with the foreclosure sale unless the full lien of

$7,959.70 was satisfied.[10]  Miles Bauer responded by tendering to Alessi & Koenig on behalf of

the HOA a check for $2,496.40.[11]  The check was returned,[12] and the HOA foreclosed on the

property nine months later on August 7, 2013.[13]  The property was purchased by the HOA,

apparently on a credit bid in the amount of $11,689.38.[14]  The HOA then quitclaimed the

property to the Trust in May 2014 for $52,246.[15]

As the Nevada Supreme Court held in *SFR Investments Pool 1 v. U.S. Bank* in 2014,

because NRS 116.3116(2) gives an HOA "a true superpriority lien, proper foreclosure of" that

lien under the non-judicial foreclosure process created by NRS Chapters 107 and 116 "will

---

[8] *Id.* at 12–16.

[9] *Id.*  The statement does reflect that Mirzoyan received two fines in early 2012 (nearly a year *after* the notice was sent), totaling $700, with a "memo" note of "12/21/11: Health, safety, welfare." *Id.* at 13.  Though such fines could qualify as part of the superpriority portion of a homeowners' association lien, these are outside of the superpriority time frame for this lien. *See Anthony S. Noonan IRA, LLC v. U.S. Bank Nat'l Ass'n*, 466 P.3d 1276, 1278 (Nev., July 9, 2020) (noting that "an HOA's providing of a notice of delinquent assessments is the institution of an action to enforce an NRS 116.3116 lien" sets the outside date for the nine-month look-back calculation).  Even if they were part of the superpriority portion of this lien, Miles Bauer's tender contained a sufficient overage to cover them.

[10] *Id.* at 17.

[11] *Id.* at 25–27.

[12] ECF No. 64-9 at 5, ¶ 11.

[13] ECF No. 64-10 at 2 (foreclosure deed recorded on 5/27/14).

[14] *Id.*

[15] ECF No. 64-11 (quitclaim deed to the Trust).

extinguish a first deed of trust."[16]  Nationstar brings this action to save its deed of trust from extinguishment.  It pleads a claim against all defendants for quiet title, and asserts claims against the HOA and Alessi & Koenig for breach of NRS 116.3116 and wrongful foreclosure.[17] Nationstar's quiet-title claim is the type recognized by the Nevada Supreme Court in *Shadow Wood Homeowners Association, Inc. v. New York Community Bancorp*—an action "seek[ing] to quiet title by invoking the court's inherent equitable jurisdiction to settle title disputes."[18]  The resolution of such a claim is part of "[t]he long-standing and broad inherent power of a court to sit in equity and quiet title, including setting aside a foreclosure sale if the circumstances support" it.[19]

Discovery has closed,[20] and Nationstar and the Trust cross-move for summary judgment on Nationstar's quiet-title claim.[21]  Nationstar argues that its predecessor's tender of the full superpriority lien amount makes this case procedurally identical to *Bank of America v. SFR Investments Pool 1, LLC*, colloquially known as the "*Diamond Spur*" case, in which the Nevada Supreme Court held that "after a valid tender of the superpriority portion of an HOA lien, a

---

[16] *SFR I*, 334 P.3d at 419.

[17] ECF No. 1 (complaint).  Nationstar also asserts a "cause of action" against the Trust for injunctive relief.  *See* ECF No. 1 at 13.  But injunctive relief is a remedy and not an independent claim, so I instead construe Nationstar's fourth claim for relief as a prayer for injunctive relief in conjunction with the quiet-title claim.  Nationstar's claims for a breach of NRS 116.3116 and wrongful foreclosure are pled in the alternative and seek relief only conditionally—"[i]f it is determined" that the sale "extinguished the senior deed of trust."  ECF No. 1 at ¶¶ 60, 68. Because I find that the foreclosure sale did not extinguish Nationstar's deed of trust, the condition precedent to these alternative claims is not met, so I dismiss them as moot.

[18] *Shadow Wood Homeowners Ass'n, Inc. v. New York Cmty. Bancorp*, 366 P.3d 1105, 1110–1111 (Nev. 2016).

[19] *Id*. at 1112.

[20] ECF No. 54 (scheduling order with a discovery cutoff of 11/4/2019).

[21] ECF Nos. 64 (Nationstar); 65 (the Trust).

1 foreclosure sale on the entire lien is void as to the superpriority portion," so the foreclosure-sale

2 purchaser takes the property subject to the deed of trust.[22]  The Trust argues that this action is

3 time-barred by the three-year statute of limitations in NRS 11.190(3)(a) and that the validity of

4 the foreclosure sale is presumed by law.[23]

5       Tackling the timeliness issue first, I conclude that Nationstar's quiet-title claim is timely

6 because it is governed by a four-year statute of limitations and Nationstar filed this action well

7 within that limitations period.  I then hold that Nationstar has established that its predecessor

8 validly tendered the superpriority portion of the lien amount, voiding the HOA's sale on the

9 superpriority portion and causing the deed of trust to survive the sale.  So I grant Nationstar's

10 motion, deny the Trust's, and enter judgment in favor of Nationstar.

**Discussion**

12 **A.   Nationstar's quiet-title claim is timely.**

13       The bulk of the Trust's arguments in support of its motion and against Nationstar's

14 challenge the timeliness of Nationstar's suit.  The Trust contends that Nationstar's quiet-title

15 claim is really one for wrongful foreclosure that is governed—and barred—by the three-year

16 statute of limitations in NRS 11.190(3)(a), which governs actions "upon a liability created by

17 statute, other than a penalty or forfeiture."[24]  Nationstar filed this suit in June 2016, *less than*

18 three years after the foreclosure sale and almost exactly two years after the HOA recorded the

19 foreclosure deed.[25]  But the Trust argues that this quiet-title claim accrued and that the statute

20

---

21 [22] *Bank of America v. SFR Inv. Pool 1, LLC* ("*Diamond Spur*"), 427 P.3d 113, 121 (Nev. 2018) (en banc).

22 [23] ECF Nos. 65, 66.

23 [24] Nev. Rev. Stat. § 11.190(3)(a).

[25] *See* ECF No. 64-10 at 2 (recording date of 5/27/14).

5

began to run well before the foreclosure occurred—when Alessi & Koenig rejected the tender in December 2012.[26]

Even if I take the Trust's December 2012 date as the true accrual one here, Nationstar's claim is timely because it is governed by the four-year period in NRS 11.220.  As I have held in countless of these HOA-foreclosure cases, and as the Nevada Supreme Court concluded in a recent, unpublished decision, these quiet-title actions are not governed by NRS 11.190(3)(a) because such a claim "does not seek to hold anyone liable, but instead simply seeks a determination regarding the parties' respective rights with regard to the subject property."[27]  Instead, a quiet-title claim by a lienholder like Nationstar is subject to the four-year limitations period in NRS 11.220.[28]  Because Nationstar filed this action within four years of the Trust's claimed December 2012 accrual date, its quiet-title claim is timely.

---

[26] ECF No. 66 at 6.  The Trust also muses that "the claims also may have accrued earlier when the first notice of sale was recorded and mailed on or about December 15, 2011."  ECF No. 65 at 19.  But it offers no reasoning to support the notion that a superseded notice of sale could trigger the statute of limitations here, so I give this argument no credence.

[27] *U.S. Bank Tr., N.A. as Tr. for LSF8 Master Participation Tr. v. SFR Investments Pool 1, LLC*, 461 P.3d 159 (Nev. 2020).

[28] *See U.S. Bank Nat'l Ass'n v. SFR Inv. Pool 1, LLC*, 376 F. Supp. 3d 1085, 1091 (D. Nev. 2019) (explaining why Nevada's catch-all four-year limitations period applies and the three- and five-year provisions are inapplicable).  I incorporate herein the entirety of that statute-of-limitations analysis because arguments advanced by the parties here are the very same, regurgitated ones that have been, and continue to be, stamped out in these assembly-line cases and briefs.

1

2 **B.      The tender of the superpriority amount cured the default, so the Trust took the property subject to the deed of trust.**

3      Nationstar argues that Miles Bauer's tender of $2,496.40, which included nine months'

4 worth of assessments,[29] operated to discharge the HOA's superpriority lien, so the deed of trust

5 was not extinguished by the foreclosure sale.  Nationstar relies on *Diamond Spur*, in which the

6 Nevada Supreme Court, sitting en banc, held that a nearly identical "tender cured the default as

7 to the superpriority portion of the HOA's lien, [so] the HOA's foreclosure on the entire lien

8 resulted in a void sale as to the superpriority portion.  Accordingly, the HOA could not convey

9 full title to the property, as [the] first deed of trust remained after foreclosure . . . [and the

10 foreclosure-buyer] purchased the property subject to [the] deed of trust."[30]  In *Diamond Spur*,

11 just as here, Miles Bauer contacted the HOA to get clarification on the superpriority amount

12 due.[31]  Based on the information received from the HOA, Miles Bauer tendered nine months'

13 worth of assessments to the HOA with a letter nearly identical to the one here.[32]  And just as in

14 this case, the HOA nevertheless sold the property at foreclosure.[33]

15      The Nevada Supreme Court explained that "[a] valid tender of payment operates to

16 discharge a lien or cure a default."[34]  Although a valid tender requires payment in full, for

17 purposes of satisfying an HOA's superpriority lien and thus saving a deed of trust from

18

19 [29] ECF. No. 64-9 at 25–27.  Miles Bauer added "reasonable collection costs" to arrive at this

20 sum, *see id*. at 26, likely because the scope of the superpriority portion of a homeowners' association lien was still being hotly debated at this pre-*SFR I* time.

21 [30] *Diamond Spur*, 427 P.3d at 121.

[31] *Id.* at 116

22 [32] *Id*.

23 [33] *Id*. at 116–17.

[34] *Id*. at 117.

extinguishment under the version of the foreclosure statute in effect in 2013, the bank needed to pay only "charges for maintenance and nuisance abatement, and nine months of unpaid assessments."[35]  Because the bank properly calculated nine months' worth of assessments based on the HOA's information, "and the HOA did not indicate that the property had any charges for maintenance or nuisance abatement," the *Diamond Spur* Court found that, "[o]n the record presented, this was the full superpriority amount."[36]

*Diamond Spur* is dispositive and compels summary judgment in favor of Nationstar.  The record here shows undisputedly that Miles Bauer validly tendered more than the full amount of the superpriority lien to the HOA.  The only charges that could comprise the superpriority portion of the HOA's lien were "charges for maintenance and nuisance abatement, and nine months of unpaid assessments."[37]  The HOA's own ledger reflects no charges for maintenance or nuisance abatement before the notice of lien went out, and the accounting that the HOA's agent provided just before the tender calculated the nine months of unpaid assessments at $164.45 per month, for a nine-month total of $1,480.05.[38]  On this record, Miles Bauer's tender of $2,496.40, which it described as "the maximum 9 months['] worth of common assessments as well as reasonable collections costs to satisfy its obligations to the HOA as a holder of the first deed of trust against the property,"[39] satisfied the full superpriority portion of the lien.  So, as the Nevada Supreme Court held in *Diamond Spur*, the foreclosure sale on the entire lien resulted in a void sale as to the superpriority portion, the "first deed of trust remained after foreclosure," and "the

---

[35] *Id*. (citing 116.3116(2) and *SFR I*, 334 P.3d at 412).

[36] *Id.* at 118.

[37] *Id*. at 117 (citing 116.3116(2) and *SFR I*, 334 P.3d at 412).

[38] ECF No. 64-9 at 16.

[39] *Id*. at 26.

HOA could not [receive—and later] convey [to the Trust] full title to the property."[40]   Nationstar is therefore entitled to summary judgment on its quiet-title claim and a declaration that the Trust purchased the property subject to the deed of trust.[41]

### Conclusion

The tender by Nationstar's predecessor-in-interest of more than the full superpriority portion of the HOA's lien before the foreclosure sale saved the deed of trust from extinguishment.  Nationstar is thus entitled to a declaration that the HOA, and the Trust as its successor-in-interest, took the property subject to the deed of trust.  And because the resolution of the quiet-title claim in Nationstar's favor moots its other quiet-title theories and Nationstar's contingent claims against the HOA and Alessi & Koenig,[42] I dismiss them, leaving no claims remaining in this action.  So, with good cause appearing and no just cause for delay,

IT IS THEREFORE ORDERED that Nationstar Mortgage LLC's Motion for Partial Summary Judgment **[ECF No. 64] is GRANTED** and 8101 Flamingo 1032 Trust's Motion for Summary judgment **[ECF No. 65] is DENIED.  Nationstar is entitled to summary judgment on its quiet-title claim based on a tender theory**.

---

[40] *Diamond Spur*, 427 P.3d at 121.

[41] Because I grant summary judgment on the tender theory, I need not and do not reach Nationstar's other quiet-title theories pled in its complaint.  Moreover, the Trust's argument that Nevada law presumes the sale was conducted properly, *see, e.g.*, ECF Nos. 66 at 7, 69 at 4, is irrelevant to the tender theory.  As the Nevada Supreme Court explained in *Shadow Wood*, 366 P.3d at 1112 (quoting *Holland v. Pendleton Mortg. Co.*, 143 P.2d 493, 496 (Cal. 1943)) (emphasis omitted), those presumptions are only conclusive "in the absence of grounds for equitable relief."  They do "not eliminate the equitable authority of the courts to consider quiet title actions . . . ."  *Id*.  Here, the validity of the foreclosure notices and foreclosure process are extraneous to the salient issue in a tender claim: whether the lien that the HOA foreclosed upon had a superpriority component.

[42] *See supra* note 17.

IT IS FURTHER ORDERED that:

- Nationstar's remaining quiet-title theories are DISMISSED as moot;

- Nationstar's contingent claims for breach of NRS 116.1113 and wrongful foreclosure (second and third claims for relief) are DISMISSED as moot; and

- Nationstar's fourth cause of action for injunctive relief is DISMISSED without prejudice because injunctive relief is a remedy, not an independent cause of action.

IT IS FURTHER ORDERED that the Clerk of Court is directed to **ENTER JUDGMENT in favor of Nationstar Mortgage LLC, DECLARING that 8101 Flamingo 1032 Trust purchased the property at 8101 W. Flamingo Road, #1032, Las Vegas, Nevada 89147 subject to the deed of trust dated January 10, 2006, and CLOSE THIS CASE.**

_____
U.S. District Judge Jennifer A. Dorsey
Dated: September 24, 2020